the seated. Clerk called the next case, please. Well, there's 312 people in the state of Illinois. I believe that just Nicolosi versus Scott Sullivan. Mr Wimmer. Good afternoon. Hey, please support. There are four issues presented in the briefs. I'm planning on speaking chiefly about the first today. Of course, if the court has any questions about any of the other issues, I'll be happy to answer them. This court should grant Scott Sullivan a new trial because there's a reasonable probability that the jury did not understand that could return a guilty verdict only if it was convinced beyond a reasonable doubt that he was guilty. Well, the court read the jury, the standard I. P. I. Jury instructions on did so only after the state first informed the jury without correction by the court that the phrase reasonable doubt had no meaning other than whatever the jury chose to give it. This court has already twice held people versus Franklin from 2012 people versus Terman from 2011 that telling a jury this, uh, deprives the phrase reasonable doubt of meaning and creates a risk, a reasonable probability that is substantively less demanding than the reasonable doubt standard. And because of verdict returned on less than proof beyond a reasonable doubt structural error, this court should reverse Mr. Sullivan's conviction and remand for a new trial before a properly instructed jury. Now the parties don't dispute in this case that the prosecutors misstated the law concerning reasonable doubt in closing argument. Uh, the Illinois Supreme Court has long held that the phrase reasonable doubt needs no definition. And this holding has two parts to it and it's important to unpack them here. The first is that there is no helpful, clarifying definition of the phrase available. Any definition you give is basically either going to be, uh, in the best case, leaving the jury right where they started, or it's going to be misleading in the worst case. The second part of that holding is that the phrase reasonable doubt is as clear as a jury instruction needs to be. It not, not only is there no definition available, no definition is required. The phrase is sufficient to convey a, uh, substantive burden of proof to the jury. And consequently, telling the jury that reasonable doubt has no meaning other than whatever the jury chooses to get it, because there's no definition to bound its decision or tell it what the phrase means, that creates a reasonable likelihood that the jury is going to use a lower standard. Uh, the, the standard of proof beyond a reasonable doubt is the most demanding, uh, burden of proof known to American law. If the jury is told that without a definition, it's up to them to choose a standard, they have nowhere to go but down. And indeed they're likely to gravitate towards the preponderance of the evidence standard, simply because that's what anybody without any interest in the truth of a factual proposition would tend to apply when they thought that proposition was true. So there's no dispute here that there was error. What's disputed is whether or not this error was structural, namely whether or not, uh, it concerned a right that was sufficiently fundamental to Mr. Sullivan's, uh, right to a fair trial that should be corrected by this court, regardless of the fact that there was no objection made to the state's improper arguments in the trial court. And both the United States Constitution and the, uh, United States Supreme Court have already had something to say about this. The Sixth Amendment, you know, guarantees, uh, no conviction except upon a trial by jury. And that's incorporated, uh, into the Fourteenth Amendment's due process clause. In Sullivan v. Louisiana, the United States Supreme Court held that the reasonable doubt standard is part of the jury guarantee and is so fundamental that essentially when the reasonable doubt standard does not apply, when there's a sufficient chance that that hasn't been done, then it's as though there is no jury verdict. And consequently, the error is fundamental. Harmless error cannot apply to this error. Uh, and the degree of risk that the jury, uh, is not applying the reasonable doubt standard that's sufficient to trigger that was set forth in Victor v. Nebraska by the United States Supreme Court, as cited by this court in Franklin in 2012. That's that, uh, when there's a reasonable probability that the jury is applying something other than the reasonable doubt standard. Now here, again, uh, the state does not challenge Terman and hence concedes that when the court tells the jury what the prosecutor told the jury in this case, that creates a reasonable likelihood that the jury is going to apply something less demanding than it's going to be structural error. State's contention is that when the prosecutor says the same thing to the jury in closing argument, there is not a reasonable likelihood that the same result will occur. But when the same words are said to the jury, there's no reason to believe that the jury is going to react any differently. And it's important to distinguish the other sorts of improper arguments because in most cases, when the state makes a misstatement of the law in closing argument or misstates the evidence in closing argument, there are procedures in place designed to prevent the jury from considering those statements, even if no specific objection is made. If the state, uh, misstates the evidence, for instance, the standard IPI instruction reminds the jury that closing statements, uh, closing arguments rather are not evidence. In this case though, the state's argument does not involve a statement of the evidence. It's a misstatement of the law, so that doesn't apply. Again, often when the state misstates the law in closing argument, it's going to be contradicted by the instructions that the court does give to the jury. Uh, and the instructions also make it clear that the instructions contain the law that the jury needs to decide the case. So for instance, if in this case, it's our job to prove, uh, that it's more likely than not that Scott Sullivan is guilty of the charged crimes, uh, that would be corrected by the IPI instruction because it's clear more likely than not is not the same thing as, uh, beyond a reasonable doubt. The problem here is that instead of directly contradicting the, uh, IPI instructions, the state's argument simply empties them out of meaning, uh, saying, yes, you'll be told that you have to find, uh, Mr. Sullivan guilty beyond a reasonable doubt, but you aren't going to be told what that means. And consequently, it's basically up to you to decide whatever that word means, what burden of proof you're going to apply. And in that situation, uh, the standard IPI instructions do nothing to correct the error. Uh, the jury is told exactly what the state tells them they're going to be told. They get the IPI reasonable doubt instruction and, uh, nothing to say that that phrase actually has any meaning. Ultimately, the last thing the state may be relying on is just an insistence that there has to be some sort of formal difference between an error in the instructions and an error in argument. But there's two responses to that. First is that when the result is ultimately the same, when the same risk that the jury is not applying the reasonable doubt standard is created, there's no reason to treat the error any differently. And the second is that there's a way of looking at this as effectively creating an error in the jury instructions. And normally speaking, the phrase reasonable doubt is clear. There's no need for a definition just telling the jury that, uh, you have to define the defendant guilty beyond a reasonable doubt is enough to let them decide the case. But once one of the parties has already come in and started saying that that phrase has no meaning, just merely telling the jury you have to decide the case beyond a reasonable doubt is no longer clear in light of the arguments that the jury has already received. Regardless of how you look at this, once the state makes this sort of attack on the reasonable doubt standard, something has to happen to correct it. The best thing that can happen is that either an objection is made by trial counsel, or if necessary, what has to happen is the trial court should step in sui sponte and make it, tell the jury to disregard the argument that the state has made. But in fact, before things even get that far, the state needs to know that it has nothing to gain from this kind of direct attack on the reasonable doubt standard in closing argument. The state already knows, it's long been part of Illinois law, that any attempt to define reasonable doubt is error, including arguments that are much, much less damaging to the defendant's position and much more innocent than this. And this isn't the sort of argument that a prosecutor is going to make by accident while discussing the evidence. For instance, in the case of the state cites in its brief UL. In that case, the state was arguing about the inferences that could be drawn from the evidence that GILTED presented, and a couple points went over the line, said the defense counsel could have presented evidence contradicting this, but didn't. That's the sort of mistake anybody can make in the context of argument. They can't accidentally go over the line and use an inappropriate verbal formulation. But there's no reason that there should be a part of any closing argument in which you tell the jury what reasonable doubt means. And there definitely shouldn't be any part where you tell them that they aren't going to receive a definition of the phrase, and that the phrase means whatever they want it to. Mr. Wimmer, what do you do with SPATE? SPATE? S-P-E-I-T. Oh, yeah, SPATE. I don't know if that's the right way to spell it. It's the right way to spell it. I'm pretty sure it's the right way to pronounce it. Give me one moment to bring out the facts of the case. It's like this case. It's somewhat similar to this case, but the big difference is that there was an objection made in the trial court, and the court sustained the objection and struck the state's argument. Once that happens, there's basically no error. Okay, but the Supreme Court said that the trial court then properly instructed the jury on reasonable doubt, and apparently that was just telling the jury that the defendant was presumed innocent unless the jury was convinced beyond a reasonable doubt that he was guilty, that the state had the burden of proving defendant guilty beyond a reasonable doubt, and that the defendant was not required to prove his innocence. And the Supreme Court found that that was a proper instruction that counteracted the prosecutor's statement. What distinguishes that case is an earlier instruction, which did a lot more to counteract the state's argument. The state said reasonable doubt is a doubt that has to be substantial, and the I will tell you what the law is in this case, and the prosecution statement of what the law is is not correct. In that case, first of all, even if there hadn't been otherwise a contradiction between the IPI instructions and what the state said in its closing argument, that would be enough to solve any error, an instruction in disregard. Furthermore, another important difference in this case is that in spate, the state's argument didn't have the same effect of trying to empty out the phrase reasonable doubt of any meaning. So in that case, what the state tells the jury, reasonable doubt is a doubt that has to be substantial. And it's clear on its face, substantial and reasonable are not the same word. They do not have the same meaning. So when the jury gets the IPI instructions, the contradiction is clear. The jury is told that the instructions contains the law it needs. So there's a presumption that the jury is going to disregard the incorrect argument and follow its instructions. In this case, again, to go back to the earlier point, because the state's improper argument depends on this notion of telling the jury that the phrase reasonable doubt has no meaning unless there's a contradiction. The IPI instructions no longer contradict the state's argument. The state's argument, in fact, is structured basically in a way to tell the jury exactly what the court is going to do. It lets them know they're going to get an instruction, but it's not going to be defined. It basically tells them that in the absence of a  So unless there are any further questions at this point, we'll just wait for a vote. Thank you. Thank you. Mr. Nicolosi, good afternoon. Good afternoon, Your Honors. May it please the Court. Mr. Wimmer. Just as Mr. Wimmer did, I'll focus my comments on Issue 1, but of course, if there are any issues on Issues 2 through 5, I would be happy to entertain them. Your Honors, this issue, I believe the defendant is a little kind of all over the map here as to what the issue is. I believe the issue is solely rooted in what the state said in what the defense counsel stated. The comments themselves, the specific substance of those comments has been held to be erroneous in the past, but I believe that this court should not follow that Franklin and Turman and other cases don't apply to this case at all, Your Honors, because of the way that these comments were delivered to the jury. In Franklin and Turman and other similar cases, the statements such as, it is for the jury to collectively decide what reasonable doubt is, comments similar to this, they were delivered by the judge in a formal, either formal instruction or in an answer to a jury's question and deliberations. Either way, those are both comments by the trial judge. In this case, the comments weren't by the trial judge. They were by the prosecutor. In this case, there was one very small phrase, one in a section of the closing arguments that was 32 pages long. It wasn't dwelled upon. It wasn't hammered home. It was a comment, and while improper, the people do submit that this was not plain error. That's really what we need to focus on here. The counsel doesn't argue that this was closely balanced, and the people would submit that, of course it is, and the facts in this case are overwhelming. The people do submit, counsel stated that this was structural error, and the people submit that this was not structural error whatsoever. This case is acquainted structural error with the second prong of plain error. I grabbed my brief, I put it down accidentally. The U.S. Supreme Court and the Illinois State Supreme Court have held that structural error only occurs in a very limited set of circumstances, and one of such circumstances where structural error does occur is where there's a defective reasonable doubt instruction. Those are the specific words that these cases use. I believe that the Illinois State Supreme Court case is Averett from, I believe, 2011. But again, it says specifically defective reasonable doubt instruction. That's, of course, even counsel has to admit that's not what we have here. We do not have an instruction. We have a statement in closing argument. There is no case, defense counsel could not cite a case because there is none. In existence that holds that closing arguments by a prosecutor regarding reasonable doubt and comments such as this equates to plain error or structural error. However, I believe the waters are a little muddy when it comes to plain error and structural error, but there isn't a case that holds either. That's that a prosecutor's comments in closing argument, similar to this, equal plain error. Quite simply put, the people submit that the prosecutor's comments did not substantially prejudice the defendant. They did not deprive the defendant of a fair and impartial trial as discussed in the second prong, plain error. The people in the brief cited several cases of similar comments in the cases including a case from this court, people versus Howell, that comments such as that do not equal plain error. The people submit and counsel mentioned the case of Ewell that was cited, E-U-E-L-L, that was cited by the people. Where in that case, the prosecutor stated in the rebuttal argument that there was no evidence to support the defendant's theory. In other words, what that prosecutor did is actually shifted the burden of proof and I would argue also reduced the burden of proof onto the defendant and the court in Ewell held that that was not, those comments were not so inflammatory as to threaten the deterioration of the judicial process. And based on Ewell and Howell and Arnett, a case discussed in my brief, the people submit that this is not only not structural error but also these comments did not deprive the defendant of a fair and impartial trial. So you're saying that, I guess I'm just trying to figure, you're saying that spite, I think it's spite or speed, that that case is different than this case because of the, I mean it, there was no plain error found because it wasn't, didn't substantially prejudice the defendant and because, I mean that they found because there was a curative instruction that was given by the judge, but other than that, it seems to be pretty much the same as what happened here, but you're saying that it has to be, in order to be structural error or second prong plain error, however, I guess we talk about it, that it has to be an actual instruction that's defective? Your Honor, I believe, and again, I meant to bring my brief up here with the specific, very specific. Thank you. Directing the court to page five of my brief, the Supreme Court of the United States has held that error is structural only in a very limited class of cases, and that was Nieder versus United States, 527 U.S. 1, 1999, and this was basically the reasoning, and everything was adopted in People versus Averett, as I mentioned before, 237, no second one, that was a 2010 case. It says structural errors include complete denial of counsel, not applicable here, denial of the right to self-representation at trial, not applicable here, a trial before a biased jury or judge, not applicable here, denial of reasonable doubt instruction. Now, that's from the U.S. Supreme Court and People versus Averett, the State Supreme Court, and that was not long ago, 2010, and until we get further instruction from the State Supreme Court, and of course, obviously, the U.S. Supreme Court, I believe that is the list of structural errors that we have to go by, and this court in People versus Williams, in 2011, 409 LF 3rd, 408, integrated the structural error analysis into their plain error analysis, and I believe by incorporating the structural error analysis, it incorporated that list of structural errors, and Your Honor, I don't believe, because this is not instruction, I don't. Okay, but what you're saying is in addition to the fact that it's not a second prong, I was just a little confused. Now you're saying, and there was no, in addition, there was no error, therefore, does it need a second prong? Yes, yes, I've always been a little confused as to when this court adopted the structural error analysis, there's cases such as Howell and Arnett, which predate the structural error analysis as it was incorporated into plain error and so I refer to it in my brief as the normal or traditional, I believe, whatever word I used, plain error analysis, so I figured I would discuss them both, but Your Honor, you did mention the thing about Spate, that the error was cured. The people submit that possibly the error could have been cured in this case, but counsel failed to object, defense counsel failed to object to this comment in that closing argument. Therefore, counsel forfeited, counsel deprived any chance of curing this error and therefore, any issue regarding to curing the error falls on counsel's failure, defense counsel's failure, the state submits. Can a structural error ever be cured? I mean, isn't the whole premise of structural error is it can neither be  You're exactly right, Your Honor. So the cases that suggest it can be cured by the court's admonishments to disregard would seem to suggest it's not structural error if a remark is included in closing argument. I completely agree and again, this is part of my seemingly never-ending confusion regarding the second prong of the plain error analysis that hopefully in a certain time I will be able to hammer out clearly, but again, Your Honor, I completely agree that this is not I have to respectfully disagree. I don't think we're limited to structural error based on the list that you've recited because when we start making lists in this profession, there's always exceptions. There's always exceptions. Your Honor, I agree, but I don't believe a case exists that instructs us that an error such as the one that we have in this case is structural error. I don't believe unless somehow I missed it or counsel missed it and I don't believe that this happened because I don't believe Franklin and Terman, I don't believe those are similar cases. Again, I don't believe this was an instruction at all. I believe this was a comment in closing argument and I believe there are significant differences between closing argument comments and formal jury instructions, Your Honor. When does it make it when the prosecutor says you will not be given an instruction on this, this is what it means? I'm sorry, can you repeat that? Yeah. When the prosecutor in his closing argument says you will not be getting an instruction on this, this is what it means, is that tantamount to an instruction? I don't believe so. I believe an instruction, I believe an instruction is a very specific term. I believe that's a term of art and only the judge gives instructions. The fact is that the reason I don't think what the prosecutor did here was prejudicial or substantially prejudicial is kind of the problem I have with Franklin and Terman and this whole line of cases anyway and it's been discussed in dissents and in passing. But the fact of the matter is that if there is no definition of reasonable doubt in these cases, there's lots of cases that say that there is none and that they will be provided none, let's say hypothetically that the judge nor the prosecutor nor defense counsel give the jury any comments such as done in this case or Franklin or Terman, then in deliberation what is the jury supposed to do? They're going to come up with the conclusion, the inevitable, inescapable conclusion that they themselves have to determine what reasonable doubt is. If nobody says anything, that's clearly what they have to do. So how could it possibly be error for the prosecutor or the trial judge, if you want to go into Franklin and Terman, to give the jury the conclusion that they are going to reach anyway? Reasonable doubt is what you collectively determine or individually determine. What else could it possibly mean? If we can't define it for them, I don't understand how telling them that they have to define it is any different than the conclusion that they're going to come up with in deliberation. Thank you very much. I don't know if that's off tangent, but it's what bothers me about all of these cases, that we're saying we can't do what they're going to do anyway. I don't quite understand it. That's why I just don't believe that there's any prejudice or anything to what the prosecutor did in this case, or Franklin or Terman. And I guess I've lost track of the question. We struggle with the same. We debate these same issues. I understand. You struggle with it as well. If the judge says the defendant is guilty, is that okay just because the jury ultimately decides that the defendant's guilty? I think I'm a little confused. Are you talking after the jury delivers their verdict? No. I'm saying beforehand, just like in this case. If the judge says reasonable doubt is whatever you think it is, you're saying that if the jury, that that's okay in your mind because the jury's going to arrive at that conclusion anyway. So I'm asking you, if the judge says the defendant's guilty before the case does that become okay because that's what the jury decided? Oh, absolutely not, Your Honor. I think that that sounds like that's the opinion of the trial judge basing the evidence. And if there's a jury, that trial judge isn't the trier fact here. I think that would be about as erroneous as you could possibly get. But that's kind of giving the jury an indication of what they should find. This is just a, I don't know, a rubric or a guiding principle. And it certainly isn't a conclusion of the evidence and whether or not the evidence presented is sufficient to convict. I believe, Your Honor, that those are considerably different. With that, if there are any other questions, I'd be happy to answer them. If not, other people request this court to affirm the murder conviction and sentence. Okay, do you have any other questions? Okay, thank you. Mr. Wimmer, rebuttal. Mr. Wimmer, can I jump all over you before you get started? Oh, of course. In a perfect world, what would you have had defense counsel do after he heard these two sentences? Object and ask that the court instruct the jury to disregard the argument. And by doing that, sometimes you call attention to the argument. You can, yes. So perhaps the only option available to defense counsel is to jump up and down and scream and yell, misconduct. In some situations, that is the result that you'd wind up with. To go back to, there was a question you had about the fact that structural error can't be cured. And it's forfeited or cured. And I don't think either applies. You can't fix a structural error, no matter how much you try. No, but there's no error here if the – this court is reviewing the actions of the trial court, the conviction, not reviewing the actions of the prosecutor. The actions of the prosecutor are important only insofar as they give rise to error. What's important is once the prosecutor has said this, is there anything more that the trial court should have done to protect the defendant's rights? And at least potentially in this situation, there are things that – Really? Yes. That's what you're arguing? Yeah, that's – That the trial judge should have done something at that point? I mean, if there's structural error, then the court has a duty to sui sponte, prevent that structural error. In essence, that's kind of what the category of structural error is. It's things that regardless of whether somebody waives them, the court has a duty to step in and make sure they occur because they are that important to the functioning of the criminal justice system. Are you in that way in your brief, that the judge had an obligation to sui sponte, step in? I think that's just kind of implicit in the nature of the structural error analysis. It does come up in a footnote in the reply brief. There was a kind of argument about whether or not this court reviews the actions of the prosecutor or the actions of the trial court and, you know, beside the Constitution, say it's the trial court. Although the prosecutor's comments give rise to error in this case, they aren't the error itself. The error occurs when the trial court fails to respond and remove any prejudice that would be caused by the prosecution. Well, I understand your argument. I'm not sure I agree with you. I understand your argument. Okay. That actually covers the chief thing that I want to state and reply. There are a couple other things that are worth going into. I mean, any argument regarding the correctness of Terminer Franklin was conceded in the opening brief, so technically the correctness, any objection to them is already waived. But I do want to respond to this suggestion that unless the jury is given a definition of the phrase reasonable doubt, then they necessarily have to decide what it means or determine what it means. It's only appropriate to say that the jury has to decide what a phrase means if the phrase is unclear in the first place. If language is clear, the person hearing it just understands it. They don't decide what the words mean any more than you're deciding what my words mean right now. As long as the phrase is sufficiently clear, the phrase is understood. And the longstanding rule in Illinois, since at least people versus Cagle, is that the phrase reasonable doubt is clear. In the absence of the court, defense counsel, or the state's attorney telling the jury a definition for reasonable doubt, the jury will simply hear the words reasonable doubt, understand them, and apply the reasonable doubt standard. And that's it. For the foregoing reasons and the other reasons articulated in the brief, I'd urge this court, unless it has any further questions at this point. Why are you looking at me? It's a fascinating area that, like I said, we often debate. Anyway, I would urge this court to reverse Mr. Sullivan's conviction and remand for a new trial. Thank you. All right. We thank you both for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in a brief recess for a panel change.